# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs January 22, 2003

## STATE OF TENNESSEE v. DONALD WADE GOFF

### Direct Appeal from the Criminal Court for Campbell County
### No. 10,914      E. Shayne Sexton, Judge

---

### No. E2002-00691-CCA-R3-CD
### August 5, 2003

---

The defendant appeals from jury-trial convictions for multiple counts of rape of a child, rape, incest, contributing to the delinquency of a minor, and attempted rape. In this appeal, the defendant challenges the sufficiency of the evidence related to his rape and contributing to the delinquency of a minor convictions, alleges that the trial court committed reversible error in failing to sever the charged offenses, and complains that his effective 80-year sentence is excessive. Based on our review, we find insufficient evidence to support the rape convictions, dismiss those convictions without prejudice to further prosecution on lesser-included offenses, reverse one conviction of contributing to the delinquency of a minor and dismiss that charge, and remand for modification of the defendant≒s sentences on the remaining convictions.

### Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed in Part; Reversed in Part; and Remanded.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Martha J. Yoakum, District Public Defender (at trial); and Charles Herman, Assistant District Public Defender (at trial), for the Appellant, Donald Wade Goff.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; William Paul Phillips, District Attorney General; and John A. Steakley, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On June 13, 2001, the Campbell County Grand Jury returned a 36-count indictment charging Donald Wade Goff with two counts of rape of a child, thirteen counts of incest, eleven counts of rape, nine counts of contributing to the delinquency of a minor, and one count of attempted rape. *See* Tenn. Code Ann. '' 37-1-156 (2001), 39-12-101 (1997), 39-13-503(a)(1) (1997), 39-13-522 (1997), 39-15-302(a)(1) (1997). The defendant pleaded not guilty,

and a jury was empaneled to hear and decide the case. At the conclusion of the state≈s case-in-chief, the trial court entered a judgment of acquittal on two rape counts, two incest counts, and two counts of contributing to the delinquency of a minor. The jury found the defendant guilty of the remaining charges, and the trial court imposed an effective sentence of 80 years.[1]

We begin by recounting the evidence at trial in the light most favorable to the state. All of the charges and convictions involve the same victim, the defendant≈s minor daughter, AG.[2] The offenses occurred in Campbell County, after the defendant, his wife of eighteen years, the victim, and the victim≈s two older sisters moved from Louisville, Kentucky to Caryville in June 1997. The defendant≈s mother-in-law and father-in-law owned land in Caryville and permitted their daughter and son-in-law to build a family residence on the property.

During the initial stages of construction, the family lived in tents on the property and showered a few times at a local motel. In August 1997, the construction had progressed to the point that the family was able to move into the unfinished basement. Living conditions, however, were still quite primitive; plastic sheeting, for instance, was hung to partition off areas in the basement. After approximately six months, the family moved upstairs, at first occupying just the main level and later both the main and second floors of the house.

In 1999, the defendant≈s wife obtained employment at a retail clothing store. She worked there for almost one year and then voluntarily resigned. In June 2000, she started working at a local nursing home. Other than construction work on the house, the defendant cut grass and performed landscaping. The wife≈s employment outside the home often left the children under the defendant≈s supervision. The defendant, according to the evidence, chronically abused alcohol and frequently insisted that his daughters ingest alcohol. The defendant≈s wife testified that the defendant would begin drinking in the morning and that he would become upset if people declined to drink with him.

Allegations that the defendant had been sexually abusing the victim surfaced in February 2001. The defendant≈s oldest daughter had, by that time, married and given birth to a child; she, her husband, and child lived in the Caryville residence. Sometime in January 2001, the oldest daughter, her husband, and child abruptly left Tennessee and moved to North Carolina. Subsequent communications between the oldest daughter and the defendant≈s wife

---

[1] As an Appendix to our opinion, we have prepared a chart listing the numerous charges, convictions, and sentences imposed at the trial court level.

[2] It is the policy of this court not to divulge the names of minors involved in sexual abuse but, instead, to use their initials.

prompted the wife to demand that the defendant leave the residence, to contact law enforcement, and to institute divorce proceedings.

In response to a pretrial defense motion, the state filed a written bill of particulars that provided more specific information about each of the 36 charges. Because these particulars supply a convenient framework within which to analyze the defendant=s appellate claims, we summarize the particulars as follows:

| Counts | Location/Time | Conduct |
|--------|---------------|---------|
| 1-2 | Caryville motel bathroom<br>On or prior to 10/4/97 | Penile penetration |
| 3-5 | Downstairs bathroom home<br>On or prior to Oct. 4, 1997 | Penile penetration &<br>supplied alcohol/drugs |
| 6-11 | Dining room home<br>Jan. 1998 - Nov. 2000 | Penile penetration &<br>supplied alcohol/drugs |
| 12-14 | Living room floor home<br>Jan. 1998 - Nov. 2000 | Penile penetration &<br>supplied alcohol/drugs |
| 15-17 | Living room couch<br>Jan. 1998 - Nov. 2000 | Penile penetration &<br>supplied alcohol/drugs |
| 18-20 | Living room couch<br>Jan. 1998 - Nov. 2000 | Penile penetration &<br>supplied alcohol/drugs |
| 21-22 | Victim=s bedroom & upstairs<br>bathroom | Penile penetration |
| 23-24 | Victim=s bedroom | Digital penetration |
| 25-30 | Bedroom closet of oldest sister | Penile penetration |
| 31-32 | Parents= master bedroom | Penile penetration |
| 33 | Parents= master bedroom<br>Nov. 2000 | Attempted penile<br>penetration |
| 34-36 | Caryville motel room<br>Summer 2000 | Penile penetration &<br>supplied alcohol/drugs |

AG was born October 4, 1984.  At the time of trial in November 2001, she was seventeen years old.  AG first testified about two events that occurred prior to her thirteenth birthday.  AG related that the first incident occurred in the bathroom of a motel in Caryville.  AG recalled that the family had been living in tents and that they went to the motel to shower.  AG testified that she was taking a bath.  Everyone except the defendant and one of her sisters had walked to a nearby gas station.  While her sister watched television, the defendant came into the bathroom and began touching AG=s vagina with his hand.  The touching progressed to digital penetration of AG=s vagina.

AG stated that the second incident occurred in the basement of the family=s new home.  AG recalled that her mother was gone at the time.  The defendant came into the basement.  In some fashion, which AG never explained, she and the defendant ended up on a bed, and he Astuck his penis in [her] vagina.@

A few months after the victim=s thirteenth birthday, the family moved into the upstairs living quarters.  AG testified that the defendant had sex with her Amore than once@ in the dining room.  AG was vague on the details.  AG said that she could not recall if the defendant supplied her with any drugs or alcohol.  AG testified that one time the defendant made her Abend over[,] and he stuck his penis in [her] vagina.@  When asked about other incidents in the dining room,  AG said that the events were Aall getting mixed up.@  Prosecution counsel prompted her by asking if something else occurred in the dining room in a Adifferent position.@  AG responded that she was on her back in the dining room.  She was unsure but thought the defendant may have given her some beer.  AG testified that the incidents in the dining room occurred at night, when her mother and sisters were in bed.

Prosecution counsel inquired if anything happened in AG=s bedroom.  AG said that it had Amore than once.@  AG related that on one occasion when she was sleeping, the defendant came into the bedroom, pulled down her pants, and stuck both of his fingers and his penis inside her.  According to AG, one of her sisters was sleeping in the bedroom with her, but the sister was not awakened by the activity.  AG said that she did not try to wake up her sister or call out because she was scared that the defendant would hurt her.  AG also said that she drank some beer that the defendant gave to her.

Continuing with testimony about events occurring in AG=s bedroom, AG testified that at a different time, the defendant came into the room and used his fingers to touch her.  No sexual intercourse occurred at that time.  When asked if the defendant had given her any sort of drugs or alcohol, AG replied, AYeah, before I went to bed.@

Turning to a different part of the house, AG testified that the defendant had sex with her more than once in her oldest sister=s bedroom closet.  She recalled a time when her mother was at work, her sisters were at school, and she was home with the defendant.  He called to her, told her to get in the closet, had her pull down her pants and bend over, and put his penis

-4-

in her vagina.  As for other incidents in the closet, AG testified, AIt happened more than two times in there but I can=t remember everything about it.@

AG was asked about sexual acts in her parents= bedroom.  She testified about one occasion when her mother was at work and the defendant had sent her sisters to bed.  The defendant asked AG to come into the bedroom, pull off his boots, and massage his feet.  AG said that the defendant started touching her, told her to take off her pants, and inserted his penis in her vagina.  AG did not recall if any drugs or alcohol were involved.

The state then focused AG=s attention to the Summer of 2000.  She testified that the defendant had sexual intercourse with her at the motel in Caryville.  AG remembered spending time at the motel because she went swimming.  She also remembered that she was in the hospital and had her appendix removed that July.  AG believed that the incident at the motel occurred a few days after she was discharged from the hospital.  AG testified that her mother was at work and that the defendant had instructed her sisters to stay at the house.  The defendant took AG to the motel and gave her beer.  The defendant professed his desire for AG.  He started touching her, and AG said that  Ait led to him sticking his penis in [her] vagina.@

At a later time in the Summer of 2000, the defendant=s wife was hospitalized.  AG testified that during the time her mother was hospitalized, the defendant had sex with her on the living room couch.  He gave her beer, and she testified that he ejaculated inside her mouth.  AG testified about two other incidents in the living room.  One of those times, she and the defendant were watching television; the defendant gave her alcohol, and Ait@ happened on the floor.  Another time, during the day, the defendant inserted his penis in her vagina while they were on the living room floor.  AG testified that beer was involved.

The attempted rape offense occurred in November 2000.   The defendant=s birthday is November 16, and AG testified that the defendant came home that evening after celebrating at a bar.  He shouted for her to come to the bedroom, pull of his boots, and massage his feet.  When she complied, the defendant tried touching her.  AG told him Ano,@ but he would not stop.  AG said that she stood up, and the defendant fell off the bed.  When he righted himself, the defendant threw AG down on the bed, pulled up her nightgown, and ripped off her underwear.  Before, however, the defendant was able to penetrate her, one of AG=s sisters ran into the room, took AG upstairs, and locked the bedroom door.

For each act of intercourse or touching, AG denied giving consent to the defendant.  When asked why she submitted to the defendant, she responded variously that she was Ascared of him,@ that he was always drinking, that he told her that he would not love her if she did not submit, and that he threatened to Astart a fight or something.@  AG denied that any force or threats were involved at the Caryville motel in the Summer of 2000.  In response, however, to the state=s leading question whether the defendant rolled her over or forced her legs

apart when he came into her bedroom, AG answered, AYeah, he put my legs apart.@  She added that she felt her legs being moved many times.

AG admitted that when her mother first confronted her, AG denied that anything had occurred.  AG explained at trial that initially she was not truthful with her mother because every time her mother inquired, the defendant was present in the room.

At the conclusion of the state=s case-in-chief, the trial court granted, in part, the defendant=s motion for judgment of acquittal.  The trial court dismissed two charges of contributing to the delinquency of a minor, Counts 5 and 8.  Count 5 related to the time period when the family was living in the basement, and AG had denied being given drugs or alcohol.  Count 8 related to the first incident in the dining room when AG did not recall being given any drugs or alcohol.  The trial court also dismissed the rape and incest charges (Counts 9 and 10) relating to the second incident in the dining room about which AG=s memory was unclear.  Finally, the trial court dismissed the rape and incest charges (Counts 23 and 24) relating to a time in AG=s bedroom when, according to AG, the defendant touched her with his fingers.

The defendant testified at trial,  AI never touched my daughter in any way sexual.@  He described his relationship with AG as good until she started getting into trouble in the eighth grade.  He testified about one occasion when AG was suspended from school because she left with a group of boys.  The defendant said that he and his wife warned AG that they would have her committed to a detention facility.  AG responded that if the defendant ever tried to send her away, Ashe would make sure [the defendant] was locked up for good.@

The defendant=s account of how he learned about the accusations was rambling and disjointed.  He denied that his wife confronted him, although he admitted that she told him that she wanted a divorce.  He claimed that they had been having marital difficulties, and he testified that he was ready to leave his wife anyway.  The defendant said he did not learn of the accusations until seven or eight weeks after leaving the house, when a law enforcement officer told him about the claims his daughter made.  Additionally, on cross-examination the defendant denied ever confessing to his wife that he had sexual intercourse with his oldest daughter and that he may have fathered the grandchild.

The state=s rebuttal case was swift and pointed.  The defendant=s oldest daughter testified that the defendant had touched her sexually A[a] lot of times,@ but she denied that the defendant had fathered her child.  She said that she did not report the abuse at the time it occurred because she was too scared.  The defendant=s wife testified that based on a telephone message left by her son-in-law, she confronted her husband during the first week in February of 2001 about his misdeeds with the oldest daughter.  She testified the defendant admitted having sexual intercourse with the oldest daughter, and he speculated that he may have fathered the grandchild.  According to the wife, AG finally disclosed on February 13 what the defendant had

been doing, at which time the wife told the defendant to leave the house and advised him that she wanted a divorce.

Based on this evidence, the jury convicted the defendant, as charged, on the remaining counts. At a separate hearing, the trial court employed concurrent and consecutive sentencing to arrive at an effective incarcerative sentence of 80 years.

## I. Severance of Offenses

In his first issue, the defendant complains that the trial court erroneously and unreasonably refused his motion to sever the charged offenses. As we shall explain, the record is inadequate for appellate review of this claim. Thus, we must affirm the lower court=s ruling.

Pretrial, the defendant filed a skeletal motion to sever offenses pursuant to Tennessee Criminal Procedure Rule 14(b)(2)(i). As grounds, the motion recites that a severance is necessary to Apromote justice and a fair trial,@ because the number of charges would unfairly prejudice a jury, and because if the offenses were tried separately, evidence of one would not be admissible in the trials of the others. We have canvassed the record before us on appeal, and we find no written order disposing of the severance motion, nor is there a transcript of any hearing that may have been held to consider and rule upon this motion. It is, of course, obvious from the trial transcripts that the charges were jointly tried. The defendant, moreover, did raise the severance issue in his written motion for new trial, and we do have a transcript of the hearing on that motion. Unfortunately, the trial court=s remarks are not enlightening as they convey nothing more than the trial court=s belief that the charges were properly tried in one proceeding.

The defendant, as the appellant, has an affirmative obligation to provide this court with a fair, accurate, and complete record of what transpired in the trial court with respect to the issues that form the bases of the appeal. Tenn. R. App. P. 24(b); *State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). When that happens, we are then able to discharge our responsibility to review the trial court's denial of a defendant's motion to sever offenses for an abuse of discretion. *See Spicer v. State*, 12 S.W.3d 438, 442 (Tenn. 2000); *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). A trial court's decision to deny severance will not be reversed unless that court misapplied a legal standard or reached a conclusion that defies logic or resulted in an injustice to the aggrieved party. *See Spicer*, 12 S.W.3d at 443.

Typically, evidence and arguments tending to establish or negate the propriety of severance must be presented to the trial court in the hearing on a pretrial motion. *Id*. at 445. Because the trial court's decision to consolidate or sever offenses is determined from the evidence presented at the hearing, Aappellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses.@ *Id*.; *see Shirley*, 6 S.W.3d at 247.

-7-

The defendant in his brief essentially argues the severance issue in a vacuum devoid of evidence developed pretrial and without reference to any findings of fact and conclusions of law of the trial court; he cannot prevail with this approach. The defendant≠s case was tried in November 2001. In the early part of 2000, the supreme court clearly explained the respective burdens of the parties depending upon whether consolidation or severance is sought.

> In the vast majority of permissive joinder and severance cases, the offenses sought to be joined have been consolidated by the state in the original indictment or information pursuant to Rule 8(b). In the usual case, therefore, *the burden is on the defendant to move for a severance of those offenses and to satisfy the criteria of Rule 14(b)(1) before separate trials will be granted*. Unless the defendant moves to sever the offenses prior to trial or at an otherwise appropriate time, the defendant waives the right to seek separate trials of multiple offenses. *See* Tenn. R. Crim. P. 12(b)(5); 14(a).

> Less frequently, however, the state may seek to consolidate offenses contained in multiple indictments upon motion pursuant to Rule of Criminal Procedure 13(a). When a defendant objects to the consolidation motion, the state must then demonstrate that the offenses are parts of a common scheme or plan and that evidence of each offense is admissible in the trial of the others.

*Spicer*, 12 S.W.3d at 443-44 (emphasis added).

With the present state of the record, we are unable to evaluate if the defendant carried his burden of satisfying the criteria of Rule 14(b)(1).[3] Under the circumstances, we are constrained to presume that the lower court≠s proceeding with unsevered charges was correct. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Therefore, we affirm the trial court≠s effective denial of the defendant≠s request to sever offenses. *See State v. Kendrick F. Love*, No. M2002-00126-CCA-R3-CD, slip op at 7 (Tenn. Crim. App., Nashville, Feb. 18, 2003)

---

[3] Rule 14(b)(1) provides,

> If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

Tenn. R. Crim. P. 14(b)(1).

(without transcript of hearing on defendant=s severance motion, trial court=s denial of severance cannot be adequately reviewed for abuse of discretion).

## II.  Sufficiency of the Evidence

On appeal, the defendant argues that the evidence was insufficient to support his rape convictions, his convictions pursuant to Counts 15-20, and the guilty verdicts on Counts 11 and 14 of contributing to the delinquency of a minor.  He claims that the state never proved that force or coercion accompanied the sexual penetration, that the victim=s uncertainty about what occurred in the living room necessitates the dismissal of Counts 15-20, and that the victim=s conflicting testimony about alcohol use requires the dismissal of Counts 11 and 14.  The defendant does not challenge his child rape convictions, his incest convictions (other than Counts 16 and 19), or his contributing to the delinquency of a minor convictions in Counts 27, 30, and 36.

We begin with our familiar standard of review.  When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 295 S.W.3d 1, 8 (Tenn. 2000).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence.  *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  This court may not substitute its inferences for those drawn by the trier of fact from the evidence.  *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State* , 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978).  On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  *Cabbage*, 571 S.W.2d at 835.

### A.  Rape Convictions

Many of our proscriptive statutes set forth alternative modes for committing crimes. Code section 39-13-503 specifies four different modes of committing rape.  Relative to this case, for each rape charge leveled against the defendant, the mode alleged is  the Aunlawful

sexual penetration of a victim by the defendant or of the defendant by a victim@ when A[f]orce or coercion is used to accomplish the act.@ Tenn. Code Ann. ' 39-13-503(a)(1) (1997). The Code defines Aforce@ as Acompulsion by the use of physical power or violence@ and expressly declares that force Ashall be broadly construed.@ *Id.* ' 39-11-106(a)(12) (1997). ACoercion,@ as used in the statute proscribing rape, is defined as Athreat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of *parental*, custodial, or official authority over a child less *than fifteen (15) years of age.@ Id.* ' 39-13-501(1) (1997) (emphasis added).

The state claims that the evidence shows a prevailing atmosphere of fear and coercion in the Goff household. According to the state, the defendant compelled AG to endure his sexual assaults through fear of violence and threats that he would stop loving her. The state points to the victim=s testimony that she was scared that the defendant would hurt her, that the defendant frequently told everyone that he would Astart a fight or something@ if they disobeyed him, and that the defendant said he would be mad and would not love the victim if she did not submit.

The state=s characterization of the evidence strikes us as an effort to persuade that the element of coercion was supplied via the Aparental authority@ language in Code section 39-13-501(1). The parental authority language, however, is qualified by the age limitation that the victim must be less than fifteen years old. *Id.* As we shall explain, the evidence fails to establish that AG was less than fifteen years old when the charged rapes occurred.

The proof shows that AG was born October 4, 1984. The family moved to Caryville in June 1997, when AG was twelve years old. Counts 1 through 5 relate to the time period prior to October 4, 1997, when AG turned thirteen years old. The trial court granted a motion for judgment of acquittal on Count 5. Counts 1 and 3 charged rape of a child, and Counts 2 and 4 charged incest. Consequently, the defendant=s sufficiency argument for his rape convictions do not apply to these counts.

The age limitation in section 39-13-501(1) becomes problematic beginning with Count 6 of the indictment. Discounting the two rape charges dismissed by the trial court, eight of the rapes set forth in the indictment (Counts 6, 12, 15, 18, 21, 25, 28, and 31) are alleged to have occurred Aon or about January, 1998 - November, 2000.@ In its written bill of particulars, the state specified no time period for these eight offenses. As of January 1, 1998, AG would have been thirteen years old, whereas by November 30, 2000, AG would have been sixteen years old. We have canvassed the record in this case but are unable to discern from the mother=s and victim=s testimony whether these eight charged rape offenses occurred before or after October 4, 1999, the victim=s fifteenth birthday.

By AG=s testimony and the state=s bill of particulars, the rape charged in Count 6 took place in the dining room; the rape charged in Count 12 took place on the living room floor; the rapes charged in Counts 15 and 18 occurred on the living room couch; the rape charged in Count 21 occurred in AG=s bedroom; the rapes charged in Counts 25 and 28 took place in her

-10-

sister=s closet; the rape charged in Count 31 happened in the master bedroom. Regarding the time frame for these offenses, the state elicited the following testimony from AG:

Q.   Okay. I want to go back through these with you a little bit and make sure we=ve covered everything. Okay? You mentioned two times in the dining room.

A.   Yes.

Q.   Did you have -- can you put those close to another event that may have happened such as --

[Defense Counsel]:   Object, Your Honor, to the leading.

THE COURT: Sustain the objection to the leading.

BY [PROSECUTION COUNSEL]:

Q.   Do you have any idea of the dates that those happened?

A.   No.

Q.   Do you have any idea of your age when those happened?

A.   It was just different ages. I mean --

Q.   All after 13?

A.   Yeah.

Q.   You mentioned twice in your bedroom. Do you have any idea of the dates of those?

A.   No.

Q.   Were you over 13?

A.   Yes.

Q.   13 or more?

A.   Yes.

-11-

Q.      Do you know how many years ago they may have -- or months ago or whatever?

A.      No.

Q.      The ones in Amanda=s room in the closet, you said there were two times, do you have any idea of the dates of those?

A.      No.

Q.      Can you tell us maybe how long ago they were, how much time has passed?

A.      Probably about two years.

Q.      The one that happened in his room, when he started by him asking you to take off his boots, do you have any idea of the date or how long.

A.      No.

The foregoing testimony is inadequate to demonstrate that the victim was less than fifteen years old at the time those offenses occurred. Indeed, the victim=s positive testimony that the rapes in her sister=s closet took place approximately two years prior to her trial testimony, which was given on November 5, 2001, establishes AG=s age at that time as fifteen years old.

The problem with the remaining rape alleged in Count 34 is even more evident. The indictment alleges that the offense occurred on or about the Summer of 2000, when AG would have been fifteen years old. AG confirmed the time frame in her testimony. She testified that she recalled spending time in the Summer of 2000 at a hotel and going swimming. She also recalled that both she and her mother were hospitalized that summer.

Consequently, we are compelled to conclude that the parental authority source of coercion for the charged rapes has not been established. *See Charles Webb v. State*, No. 03C01-9606-CC-00211 (Tenn. Crim. App., Knoxville, Jan. 28, 1997) (AFrom the trial record, it is quite clear that the victim was, in fact, fifteen years old at the time of the alleged offense. The issue of ×coercion by parental authority= is therefore inapplicable to the present case.@). That being said, there are two other avenues by which the sufficiency of the rape convictions might be upheld. Section 39-13-501(1) supplies an alternative definition of coercion as the Athreat of kidnapping, extortion, force of violence to be performed immediately or in the future.@ Tenn. Code Ann. ' 39-13-501(1) (1997). Also, the rape statute provides that either Aforce@ or Acoercion@ will

suffice. *Id.* ' 39-13-503(a)(1) (1997). AForce,@ as we previously stated, means Acompulsion by the use of physical power or violence.@ *Id.* ' 106(a)(12) (1997).

Beginning with Aforce,@ we are mindful that the statute specifies the term is to be Abroadly construed.@ *Id.* Even so, the only evidence in the record of force that the defendant used is in connection with the attempted rape charge in Count 33. AG testified that the defendant told her to come into the bedroom and to remove his boots. The defendant was overtly inebriated and kept trying to touch AG. AG said that she rebuffed his advances and told him Ano.@ As AG stood up, the defendant fell out of the bed. He then stood, threw AG down on the bed, pulled up her nightgown, and ripped off her underwear. One of AG=s sisters intervened before the defendant penetrated AG. We have no hesitation, from this testimony, concluding that the defendant=s actions constituted the use of force, and the evidence supporting this attempted rape conviction is clearly sufficient. *See State v. Arthur Clark*, No. W1999-01747-CCA-R3-CD (Tenn. Crim. App., Jackson, Aug. 25, 2000) (evidence sufficient to prove rape by force when defendant pinned woman down, pushed her head into the pillow, forcibly pulled her underclothing down, and vaginally penetrated her from behind).

By contrast, the following exchange occurred during AG=s direct examination concerning the substantive rape charges:

> Q. The ones that happened in your bedroom, do you remember anything that he may have said or done to get you to do -- or to get you to go along with it?
>
> A. No.
>
> Q. Any sort of force or threats?
>
> A. No. I was asleep when he come up there.
>
> Q. Okay. Did he roll you over, force your legs apart, anything like that?
>
> A. Yeah, he put my legs apart.
>
> Q. Are we talking specifically about this time or in general?
>
> A. Many times. When I was asleep I felt my legs move.
>
> Q. Okay. In the master bedroom did he force or threaten, can you specifically recall from that time?

-13-

Q.    A.    (No verbal response).

Q.    You≠re shaking your head.  Do you --

A.    No.

Q.    The summer of last year in the hotel in Caryville, I may
      have asked you this already, any force or threats?

A.    No.

The state points to and argues that the evidence shows the defendant forced AG≠s legs apart.  We cannot agree.  AG actually testified that the defendant Aput [her] legs apart,@ and that at times when she was asleep she Afelt [her] legs move.@  In our opinion, this testimony, without more, is insufficient to establish force.  *See State v. Wade Henry Allen Marsh*, No. E1998-00057-CCA-R3-CD (Tenn. Crim. App., Knoxville, May 8, 2000)  (no evidence of forcible rape; state contended that defendant forced victim≠s legs apart, but record showed that victim stated only that defendant Aopened [her] legs and got between her@), *perm. app. denied* (Tenn. 2001).

The final possibility that we now explore is whether the evidence demonstrated coercion in the sense of a Athreat of kidnapping, extortion, force or violence to be performed immediately or in the future.@  Tenn. Code Ann. ' 39-13-501(1) (1997).  We find no evidence that the defendant ever threatened kidnapping or extortion.  Regarding force or violence, an Aimplicit threat of violence@ has been held by our court to qualify as coercion under Code section 39-13-501(1).  *See State v. Lee Roy Gass*, No. E2000-00810-CCA-R3-CD (Tenn. Crim. App., Knoxville, July 3, 2001); *State v. Leland Ray Reeves*, No. 01C01-9711-CR-00515 (Tenn. Crim. App., Nashville, March 23, 1999), *perm. app. denied* (Tenn. 1999).  Those cases are distinguishable, however.

In *Lee Roy Gass*, the defendant was a constable in Hamblen County.  While on duty, he picked up the victim, and they drove to an office building.  *Lee Roy Gass*, slip op. at 2.  The defendant and the victim entered the building, whereupon the defendant removed his pants and placed his gun belt on a desk within arm≠s reach.  *Id*., slip op. at 3.  The defendant ordered the victim to remove her shorts, and when she refused, the defendant Araised his voice and told her that she had >better do it,= whereupon she complied.@  *Id*.  The court concluded that this testimony established the defendant≠s Ause of coercion or threat of force or violence, albeit the threat was implied.@  *Id*., slip op. at 9.

In *Leland Ray Reeves*, the victim related that the defendant, her stepfather, had a history of violent behavior, which engendered her fear of him.  The court explained,

-14-

The victim testified that as to [the rape charge], she informed the defendant that she did not want to engage in sexual intercourse but that Ahe did it anyway.@ She also testified that she was afraid of the defendant because he tended to be physically abusive. In our view, this evidence is sufficient to support the inference that the rape was accomplished through the use of coercion. The record supports the conclusion that the victim acquiesced to the sexual encounter because of the implicit threat of violence.

*Leland Ray Reeves*, slip op. at 7.

In this case, there was no testimony that would provide a framework for finding an Aimplicit@ threat of violence. Notably, although the evidence clearly showed the defendant consumed alcohol frequently and excessively, there was no testimony that the defendant became physically abusive when he did so. The occasion when the defendant threw AG down on the bed, pulled up her nightgown, and ripped off her underwear was the last-in-time charged offense. The defendant=s wife never related any incidents of physical violence by the defendant. Nor was there any testimony that the defendant brandished any kind of weapon when he commenced the sexual assaults.

The victim did testify that she was scared that the defendant would hurt her, but when asked what caused her belief, she said only that the defendant was always drinking and that the defendant Awas always telling everybody if you didn=t do what he wanted -- what he wanted you to, he -- he=d do something to you, start a fight or something.@ At another point, the victim said that the defendant told her that she had better do what he said Aor he=ll be mad at me.@ The evidence, in our opinion, is simply too speculative to rise to the level of an implied threat of violence.

Consequently, for the foregoing reasons, we hold that the evidence is insufficient to show beyond a reasonable doubt that the defendant accomplished the sexual penetrations through the use of force or coercion. The evidence supporting the defendant=s attempted rape conviction is legally adequate, and that conviction is affirmed. The defendant=s substantive rape convictions, Counts 6, 12, 15, 18, 21, 25, 28, 31, and 34, however, cannot be sustained.

For the same reason that the rape convictions cannot stand, the evidence is also insufficient to support a conviction for the lesser-included offense of sexual battery by force or coercion. Tenn. Code Ann. ' 39-13-505(a)(1) (1997) (ASexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim@ when A[f]orce or coercion is used to accomplish the act.@); *see State v. Bowles*, 52 S.W.3d 69, 77 (Tenn. 2001) (sexual battery is lesser-included offense of aggravated rape under part (b) of *Burns* test); *State v. Michael Elvis Green*, No. W2001-00455-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Jackson, March 8,

-15-

2002) (if sexual battery is lesser-included offense of aggravated rape, it follows that sexual battery is also a lesser-included offense of rape).

We remand the affected counts for such further proceedings as the law provides and as the state desires to pursue. *See State v. Swindle*, 30 S.W.3d 289, 292-93 (Tenn. 2000).

## B. Contributing to the Delinquency of a Minor

The defendant=s argument that the evidence is insufficient to support his contributing to the delinquency of a minor convictions on Counts 11 and 14 is meritorious with respect to Count 11.[4]  Count 11 relates to the second incident in the dining room.  Contributing to the delinquency of a minor can be established by proof that a defendant provided or supplied a minor with alcohol or drugs. *See, e.g., State v. Wayne Michael Fuller*, No. E1999-01676-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Aug. 16, 2000).  Code section 37-1-156(a) states

> Any adult who contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an act of delinquency, unruly conduct or by aiding the child in concealing an act of delinquency or unruly conduct following its commission, commits a Class A misdemeanor, triable in the circuit or criminal court.

Tenn. Code Ann. ' 37-1-156(a) (2001).

At trial, AG testified in relevant part:

Q.      Were you on the floor?

A.      Yes.

Q.      Was that in the dining room?

A.      Mmm-hmm.

---

[4] We reject the state=s suggestion that the defendant has waived review of this issue because it was not raised at trial or in a motion for new trial.  Evidence sufficiency and sentencing issues need not be included in a motion for new trial to be reviewable on appeal.  Tenn. R. App. P. 3(e); *see State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997).

-16-

Q.      Did he give you any sort of drugs or alcohol?

A.      I=m not for sure.  I think maybe some beer.

Q.      Maybe some beer.

A.      Yeah.

This testimony, in our opinion, is too elusive to establish the essential elements of Count 11 beyond a reasonable doubt.  Absent other evidence and with the only witness expressing uncertainty on this important point, that conviction cannot stand.

By contrast, Count 14 corresponds to one of the incidents on the living room floor.  AG testified that beer was involved.  Indeed, AG testified that alcohol was involved on each occasion in the living room.  The jury was entitled to believe AG and conclude that the defendant had criminally contributed to the delinquency of a minor.  Our appellate review extends no further; the strength of AG=s testimony on this point and her credibility are beyond our defined purview.  The evidence supporting Count 14 is legally sufficient.

### C.  Counts 16-20

The defendant=s final sufficiency challenge is to his convictions pursuant to Counts 16, 17, 19, and 20.  These convictions correspond to the victim=s testimony about other acts of sexual penetration that occurred in the living room of the house.

Unlike the Aforce and coercion@ mode of rape charged in defendant=s prosecution, the offense of incest is defined as Aengag[ing] in sexual penetration as defined in ' 39-13-501, with a person, knowing such person to be, without regard to legitimacy[,] . . . [t]he person=s natural parent, child, grandparent, grandchild, uncle, aunt, nephew, niece, stepparent, stepchild, adoptive parent, [or] adoptive child.@ Tenn. Code Ann. ' 39-15-302(a)(1) (1997).  AG related in her testimony that sometime in the Summer of 2000 and while her mother was hospitalized, the defendant gave her beer, and she performed fellatio on him while they were on the living room couch.  That testimony, which the jury was entitled to believe, supports the incest and contributing to the delinquency of a minor convictions for Counts 16 and 17.  AG also testified about another incident in the living room when the defendant gave her beer, started touching her, and progressed to sexual intercourse on the living room floor.  Again, this testimony, if believed, was legally sufficient to support the incest and  contributing to the delinquency of a minor convictions for Counts 19 and 20.

### III.  Sentencing

-17-

Last, the defendant challenges his effective 80-year sentence on three grounds; he claims (1) that the trial court did not correctly apply one mitigating factor, (2) that the trial court did not consistently apply enhancement factors, and (3) that consecutive sentencing resulted in a palpably excessive sentence. Although the defendant=s effective sentence must be modified to take into account the dismissal of the rape convictions, we otherwise affirm the trial court=s length of sentence determinations and the imposition of consecutive sentencing.

When there is a challenge to the length, range or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. ' 40-35-401(d) (1997). This presumption is Aconditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.@ *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). AThe burden of showing that the sentence is improper is upon the appellant.@ *Id*. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id*. If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, Aeven if we would have preferred a different result.@ *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, after hearing the evidence and arguments, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant=s behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann,. ' 40-35-210(a), (b) (Supp. 2002); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In this case, for each of the felony Class A child-rape convictions, the trial court imposed the presumptive mid-range sentence of 20 years. *See* Tenn. Code Ann. ' 40-35-210(c) (Supp. 2002). The trial court ordered a four-year sentence for each Felony Class C incest conviction, which is only one year above the presumptive minimum sentence. *Id*. ' 40-35-210(c) (Supp. 2002). For the defendant=s attempted rape conviction, the trial court imposed a four-year sentence, which is only one year above the presumptive minimum sentence. *Id*. '' 39-13-503(b) (1997) (rape is a Class B felony), 39-12-107(a) (1997) (criminal attempt is an offense one classification lower than the most serious crime attempted). Last, for each of the Class A misdemeanor contributing to the delinquency of a minor convictions, the trial court ordered a sentence of eleven months, 29 days.

We have reviewed the transcript of the sentencing hearing, and at the hearing, the defendant offered no corrections or additions to the presentence report. The report identifies two enhancement factors based on prior criminal activity and a previous history of unwillingness to

comply with conditions involving release in the community. *See* Tenn. Code Ann. ' 40-35-114(2), (9) (Supp. 2002). The defendant did not contest those enhancement factors, and although he asked the trial court to consider in mitigation that his conduct did not cause or threaten serious bodily injury, *id.* ' 40-35-113(1) (1997), he also conceded that the enhancement factors outweigh the mitigating factors. Given these circumstances, we find no basis to second guess how the trial court weighed the enhancement and mitigating factors to arrive at appropriate sentences within the applicable ranges. *See State v. Boggs*, 932 S.W.2d 467, 475-76 (Tenn. Crim. App. 1996) (weight to be afforded applicable enhancement and mitigating factors left to sentencing court=s guided discretion).

Once we factor out the sentences imposed for the rape convictions, which cannot stand, the defendant=s effective sentence becomes 56 years, with the application of concurrent and consecutive sentencing. For Counts 1 through 4, the trial court imposed presumptive mid-range sentences of 20 years for both of the child rape convictions[5] and imposed four-year sentences for both incest convictions. The incest convictions were ordered to be served concurrently with the child rape convictions, for which consecutive sentencing was ordered, thereby producing an effective sentence of 40 years. An additional sixteen years derives from four incest convictions, Counts 7, 13, 16, and 19, for which the trial court also imposed consecutive sentencing.

When a defendant is convicted of one or more offenses, the trial court must determine if the sentences shall be served concurrently or consecutively. Tenn. Code Ann. ' 40-35-115 (1997). Consecutive sentencing may be imposed at the discretion of the trial court upon a determination that one or more of the following criteria exist:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . . ;

---

[5] Pursuant to Code section 40-35-501(i)(1), (2)(I), there is no release eligibility for a person convicted of child rape, and the convicted defendant is required to Aserve one hundred percent (100%) of the sentence imposed,@ with the possibility of a maximum reduction of fifteen percent for Asentence credits earned and retained.@ Tenn. Code Ann. ' 40-35-501(i)(1), (2)(I) (Supp. 2002).

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant≡s undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation; or

(7)  The defendant is sentenced for criminal contempt.

*Id.* ' 40-35-115(b)(1)-(7) (1997).  Furthermore, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be Ajustly deserved in relation to the seriousness of the offense@ and Ano greater than that deserved for the offense committed.@ *Id.* ' ' 40-35-102(1), -103(2) (1997); *see State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

The trial court findings in support of consecutive sentencing appear in the record as follows:

Reviewing the statute concerning consecutive sentencing, it is discretionary for a Court to render consecutive sentences if the defendant is convicted of two or more statutory offenses involving sexual abuse of a minor.  Considering the relationship between the defendant and the victim, the times -- the time spent in defendant≡s actual detected sexual activity and the nature and scope of the events, this was clearly a very troubling case.  The State said it happened over a great length of time, many separate acts, many types of acts.  It is a -- I think it does warrant -- I think that the record would support the Court rendering multiple -- rendering consecutive sentences in some form or fashion.

The trial court≡s concerns prompting the discretionary imposition of consecutive sentencing appear well founded, and we are of the opinion that the record supports the trial court≡s sentencing decision.  *See, e.g., State v. Lane*, 3 S.W.3d 456, 459-60 (Tenn. 1999) (consecutive sentencing upheld for a defendant who committed multiple offenses involving

-20-

sexual abuse of a minor victim). The defendant has not persuaded us, as is his burden, that these sentences are inappropriate. *See Ashby*, 823 S.W.2d at 169. In his brief, the defendant argues that the 80-year sentence imposed by the trial court is excessive and greater than deserved; he suggests that the public can be adequately protected by an overall sentence of 40 years. Whatever the merits of an 80-year sentence, we can say with confidence that an effective sentence of 56 years is justified, deserved, and reasonably related to the seriousness of the defendant=s reprehensible conduct.

Finally, the sentences and judgment forms must be modified for some of the convictions on remand for the following reasons. For the incest convictions corresponding to Counts 7, 13, 16, and 19, the trial court imposed four-year sentences. The trial court ordered the four-year sentence for Count 7 to be served concurrently with the sentence for Count 6. The rape conviction for Count 6, however, has been reversed for insufficient evidence; consequently, the concurrent portion of the sentence cannot stand. Nonetheless, the trial court also ordered that the four-year sentence be served consecutively to Counts 1 - 4, and that part of the judgment is valid.

Turning next to the four-year sentence for incest related to Count 13, the same problem arises. That sentence cannot be served concurrently with the sentence for the rape conviction in Count 12, which has been reversed. Likewise, the four-year sentence cannot be served consecutively to rape Count 6, as the judgment presently reflects, but it may be served consecutively to Counts 1-4 and Count 7.

The judgment for Count 16 must be similarly modified. That four-year sentence cannot run concurrently with the rape conviction in Count 15, which has been reversed. Also, the four-year sentence cannot run consecutively to rape Counts 6 and 12, but it may be served consecutively to Counts 1-4, 7, and 13.

The judgment for Count 19 must be modified because that four-year sentence cannot run concurrently with the rape conviction in Count 18, which has been reversed. The four-year sentence, moreover, cannot run consecutively to rape Counts 6, 12, and 15, but it may be served consecutively to Counts 1-4, 7, 13, and 16.

Beginning with Count 20 and ending with Count 36, the trial court imposed straight concurrent sentencing. For those counts, the judgments should be modified to remove any reference to the rape convictions corresponding to Counts 6, 12, 15, 18, 21, 25, 28, 31, and 34 and to the contributing to the delinquency of a minor conviction corresponding to Count 11. By the same token, the straight concurrent sentencing ordered for the contributing to the delinquency of a minor convictions in Counts 14, and 17 should be revised to exclude the rape convictions corresponding to Counts 6, 12, and 15 and the contributing to the delinquency of a minor conviction corresponding to Count 11.

-21-

## IV.  Conclusion

For the foregoing reasons, we hold that the evidence is legally insufficient to support the defendant≠s convictions for rape Count 11 and the conviction of contributing to the delinquency of a minor.  The rape convictions are reversed and the charges dismissed, without prejudice to further prosecution for appropriate lesser-included offenses.  The conviction in Count 11 is reversed and the charge is dismissed.  The dismissal of the rape convictions, in turn, requires that the defendant≠s sentences be remanded and modified, consistent with our opinion, to remove any reference to or resulting consequence from the rape convictions.

In all other respects the judgments are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

**APPENDIX**
**STATE V. DONALD WADE GOFF**

| Count/Time Frame Charge | | Verdict | Sentence Length | Sentence Service |
|---|---|---|---|---|
| 1/Child Rape | Prior to 10/4/97 | Guilty | 20 yrs at 100% | |
| 2/Incest | Prior to 10/4/97 | Guilty | 4 yrs at 30% | Concurrent with Ct. 1 |
| 3/Child Rape | Prior to 10/4/97 | Guilty | 20 yrs at 100% | Consecutive to Cts. 1 & 2 |
| 4/Incest | Prior to 10/4/97 | Guilty | 4yrs at 30% | Concurrent with Ct. 3 & Consecutive to Cts. 1 & 2 |
| 5/CDM | Prior to 10/4/97 | Acquittal | | |
| 6/Rape | Jan. >98-Nov. >00 | Guilty | 10 yrs at 100% | Consecutive to Cts. 1, 2, 3 & 4 |
| 7/Incest | Jan. >98-Nov. >00 | Guilty | 4 yrs at 30% | Concurrent with Ct. 6 & Consecutive to Cts. 1, 2, 3, & 4 |
| 8/CDM | Jan. >98-Nov. >00 | Acquittal | | |
| 9/Rape | Jan. >98-Nov. >00 | Acquittal | | |
| 10/Incest | Jan. >98-Nov. >00 | Acquittal | | |
| 11/CDM | Jan. >98-Nov. >00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6 & 7 |
| 12/Rape | Jan. >98-Nov. >00 | Guilty | 10 yrs at 100% | Consecutive to Cts. 1-4, 6, & 7 |
| 13/Incest | Jan. >98-Nov. >00 | Guilty | 4 yrs at 30% | Concurrent with Ct. 12 & Consecutive to Cts. 1-4, 6 & 7 |
| 14/CDM | Jan. >98-Nov. >00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7 & 11-13 |
| 15/Rape | Jan. >98-Nov. >00 | Guilty | 10 yrs at 100% | Consecutive to Ct. 1-4, 6-7 & 12-13 |

| | | | | |
|---|---|---|---|---|
| 16/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Ct. 15 & Consecutive to Cts. 1-4, 6-7 & 12-13 |
| 17/CDM | Jan. '98-Nov. '00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7 & 11-16 |
| 18/Rape | Jan. '98-Nov. '00 | Guilty | 10 yrs at 100% | Consecutive to Cts. 1-4, 6-7, 12-13 & 15-16 |
| 19/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Ct. 18 & Consecutive to Cts. 1-4, 6-7, 12-13 & 15-16 (80 yrs effective sentence) |
| 20/CDM | Jan. '98-Nov. '00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7 & 11-19 |
| 21/Rape | Jan. '98-Nov. '00 | Guilty | 10 yrs at 100% | Concurrent with Cts. 1-4, 6-7 & 11-20 |
| 22/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7 & 11-21 |
| 23/Rape | Jan. '98-Nov. '00 | Acquittal | | |
| 24/Incest | Jan. '98-Nov. '00 | Acquittal | | |
| 25/Rape | Jan. '98-Nov. '00 | Guilty | 10 yrs at 100% | Concurrent with 1-4, 6-7 & 11-22 |
| 26/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25 |
| 27/CDM | Jan. '98-Nov. '00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-26 |
| 28/Rape | Jan. '98-Nov. '00 | Guilty | 10 yrs at 100% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-27 |
| 29/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-28 |
| 30/CDM | Jan. '98-Nov. '00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-29 |

| | | | | |
|---|---|---|---|---|
| 31/Rape | Jan. '98-Nov. '00 | Guilty | 10 yrs at 100% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-30 |
| 32/Incest | Jan. '98-Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7, 11- 22 & 25-31 |
| 33/Att. Rape | Nov. '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-32 |
| 34/Rape | Summer '00 | Guilty | 10 yrs at 100% | Concurrent with Cts. 1-4, 6-7, 11- 22 & 25-33 |
| 35/Incest | Summer '00 | Guilty | 4 yrs at 30% | Concurrent with Cts. 1-4, 6-7, 11- 22 & 25-34 |
| 36/CDM | Summer '00 | Guilty | 11/29 at 75% | Concurrent with Cts. 1-4, 6-7, 11-22 & 25-35 |